# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| KENNETH F., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. SA CV 19-02059-DFM <br><br> MEMORANDUM OPINION AND ORDER |

## I.  INTRODUCTION

Kenneth F. ("Plaintiff") applied for Social Security Disability Insurance Benefits and Supplemental Security Income in 2016, alleging disability beginning August 2, 2015. See Dkt. 17-2, Administrative Record ("AR") 49-50, 61-62, 73-74.[1] After being denied, see AR 77-81, Plaintiff received a hearing before an Administrative Law Judge ("ALJ") that took place on September 11, 2018. See AR 31-48.

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Additionally, all citations to the AR are to the record pagination. All other docket citations are to the CM/ECF pagination.

The ALJ issued an unfavorable decision dated October 24, 2018. See AR 15-25. The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date through his date last insured of December 31, 2020. See AR 17. At step two, the ALJ determined that Plaintiff had the severe impairments of "cervical spine degenerative disc disease without myelopathy; lumbar spine degenerative disc disease; left knee internal derangement; and history of hearing loss." Id. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See AR 19.

Before reaching step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with additional limitations: he could lift, carry, push, or pull up to 20 pounds occasionally and 10 pounds frequently; stand or walk for 4 hours and sit for 6 hours out of an 8-hour workday; frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, and crouch; occasionally crawl; frequently have exposure to unprotected heights and uneven terrain; frequently push or pull with his upper extremities; and work with no more than a moderate noise level. See AR 20. At step four, the ALJ found that Plaintiff could perform his past relevant work as an operations manager (Dictionary of Occupational Titles or "DOT" 183.117-010) and chief security guard (DOT 372.167-014). See AR 24. Accordingly, the ALJ denied benefits. See AR 25.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-3. This action followed. See Dkt. 1.

## II. LEGAL STANDARD

A district court will set aside a denial of Social Security benefits only if the decision "contains legal error or is not supported by substantial evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (citations and internal quotation marks omitted). The substantial evidence threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 1157 (2019). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). A court may affirm the ALJ's decision even if the ALJ made an error, so long as the error was harmless, meaning it was "inconsequential to the ultimate nondisability determination." Tommasetti, 533 F.3d at 1038 (citation omitted).

## III. DISCUSSION

The parties dispute whether the ALJ erred in (1) weighing the medical opinion evidence and (2) determining that Plaintiff did not have any severe mental impairments. See Dkt. 18, Joint Stipulation ("JS") at 13.

### A. Medical Evidence

Plaintiff argues that the ALJ erred in giving limited weight to the medical opinion of his treating physician, Dr. Gayle Hopper. See JS at 13-20.

"Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014). Nevertheless, the ALJ need not accept the opinion of a treating physician. An

ALJ may disregard a treating physician's opinion by giving "clear and convincing" reasons if the opinion is uncontroverted, or for "specific and legitimate reasons" is the opinion is controverted. Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020) (citation omitted).

In January 2017, Plaintiff sought primary care from Dr. Hopper. Plaintiff's chief complaint was pain in his neck and headaches. See AR 448. Dr. Hopper advised Tizanidine, heat, range of motion exercises, low impact activities, and no heavy lifting, prolonged lying, sitting, or standing. See AR 451. In March 2017, Dr. Hopper issued a "Physical Assessment," in which she opined, among other things, that Plaintiff could neither sit for more than 30 minutes nor stand or walk for more than 30 minutes in an 8-hour workday, needed constant breaks, could never lift anything 20 pounds or heavier, and would be absent from work more than 4 times a month. See AR 316-17. In April 2017, Dr. Hopper noted that an X-Ray of Plaintiff's knees showed degenerative changes consistent with arthritis, and the X-Ray of his lower back showed straightening of curvature consistent with muscle spasm. See AR 319. In May 2017, Dr. Hopper assessed low back pain and referred Plaintiff to an orthopedist. See AR 354. In January 2018, Dr. Hopper again assessed low back pain and knee pain and advised Plaintiff to change position often and to not engage in prolonged lying, sitting, or standing. See AR 453-56. Later visits in 2018 were similar, with Dr. Hopper recommending that Plaintiff change positions often. See AR 540, 544.

Because Dr. Hopper's opinions were contradicted by the reports of the consultative examiner, the ALJ could reject her opinion by giving "specific and legitimate reasons" for doing so. Ford, 950 F.3d at 1154. The ALJ discounted Dr. Hopper's opinion because her RFC assessment provided "minimal objective findings to support the rather restrictive work limitations." AR 23. This is a specific and legitimate reason, supported by substantial evidence in

the record. Indeed, Dr. Hopper's January 2017 examination of Plaintiff was unremarkable, with recommendations that Plaintiff try heat, range of motion exercises, low impact activities such as biking, and to change positions often. See AR 451. But just two months later, Dr. Hopper opined, without any additional findings, that Plaintiff could neither sit for more than 30 minutes nor stand or walk for more than 30 minutes in an 8-hour workday, could never lift 20 pounds or more, and would be absent from work more than 4 times a month. See AR 316-17. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Ford, 950 F.3d at 1154 (citation omitted).

Plaintiff contends that the ALJ ignored Dr. Hopper's repeated and consistent recommendation that he avoid prolonged sitting, walking, and standing. But as the Commissioner correctly notes, the medical source statement that Plaintiff relies on was dated March 23, 2017, and the treatment records to which Plaintiff cites were created after that statement was made. See AR 316-17 (Physical Assessment); 319 (April 2017), 358 (May 2017), 455 (January 2018), 536 (August 2018), 540 (June 2018), 544 (June 2018). In any event, none of the treatment records to which Plaintiff cites substantiate Dr. Hopper's significant limitations. Plaintiff does not explain, for example, how a recommendation that he should change positions often necessitates sitting, standing, and walking restrictions at a less than sedentary level. It is also hard to square Dr. Hopper's opined limitations with her recommendation that Plaintiff exercise for an hour each day and engage in various activities, such as yoga, Pilates, biking, and swimming. See AR 451.

The ALJ also stated that the objective evidence did not support Dr. Hopper's upper extremity limitations. See AR 23. This reason was likewise supported by substantial evidence. Dr. Hopper opined that Plaintiff had

5

limitations in doing repetitive reaching, handling, or fingering, and indicated that Plaintiff could spend 80% of an 8-hour workday doing fine and gross manipulation and reaching. See AR 316. But there are no electrodiagnostic findings that would support such limitations and Plaintiff's neurological examinations throughout the relevant period were unremarkable. In response, Plaintiff merely notes that these "minor manipulative limitations" are "less significant to this matter" than the other exertional limitations. JS at 16. Even if so, the fact that Dr. Hopper's opinion was inconsistent with the medical records and had little support in the clinical findings provided a valid reason to reject it. See Tomasetti, 533 F.3d at 1041 (inconsistency with medical record); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (inadequate support in clinical findings). Additionally, Dr. Hopper's upper extremity limitations were contradicted by the findings of the consultative examiner, Dr. Azizollah Karamlou, who found that Plaintiff had a grip strength of 80 pounds with each hand. See AR 391; Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion constitutes substantial evidence where it rests on independent examination of claimant).

Separate from Dr. Hopper, Plaintiff argues that the ALJ erred in assigning any weight to the opinion of Dr. Karamlou, who opined that Plaintiff had the capacity to perform a range of light exertional work. See AR 23, 393-400. The ALJ gave significant weight to the opinion of Dr. Karamlou because her restrictions were "generally consistent with the evidence at the hearing level," she had the opportunity to examine Plaintiff in person, and her findings were "consistent with her medical opinion regarding the claimant's exertional and postural limitations." AR 23.

Plaintiff objects that Dr. Karamlou's opinion was made without the benefit of subsequent diagnostic imaging and Dr. Eric Lin's notation that Plaintiff required cervical spine fusion surgery. See JS at 15. While that is true,

the two opinions are not inconsistent. Dr. Lin did recommend surgery, but his physical examination was mostly normal, with findings of no radiating arm pain, a negative straight leg raise test, normal reflexes, and 5/5 strength in the upper extremities. See AR 548, 551. And the June 2018 MRI that Plaintiff references did show degenerative disc disease, but no indication of radiculopathy, as the ALJ noted and Dr. Lin observed. See AR 22, 548, 551. The Court thus rejects Plaintiff's contention that Dr. Lin's findings somehow invalidated Dr. Karamlou's opinion and supported Dr. Hopper's extreme limitations.

Accordingly, the Court finds that the ALJ did not err in evaluating the medical opinion evidence.

**B.** **Severity of Mental Impairment**

Plaintiff argues that the ALJ erred in finding his mental health impairments to be nonsevere. See JS at 30-33.

At step two of the disability determination, the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments that meets the duration requirement. See Keyser v. Comm'r SSA, 648 F.3d 721, 725 (9th Cir. 2011). Severe impairments have more than a minimal effect on an individual's ability to perform basic work activities. See Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005). An ALJ's conclusion that a claimant lacks a medically severe impairment or combination of impairments must be supported by substantial evidence. See id.

At the hearing, Plaintiff testified that he was laid off from his security officer position on August 29, 2015. See AR 35. He worked for a different security company in November 2015 hoping that they would give him a full-time position, but they did not. Id. At around that time, he intended to commit suicide, but he visited his sister for ten months and never sought therapy. See AR 36. He began seeking therapy a month or two before the hearing. Id.

Plaintiff also testified that "[a]nything from running water to bright lights to crowd[s]" triggers his anxiety. AR 42-43. He isolates himself and avoids everybody. See AR 43. He takes an antidepressant which "opened [his] eyes" to how angry he had been. Id. He thinks about committing suicide every day. See id.

The ALJ concluded that Plaintiff's impairments of depression and anxiety disorder were nonsevere. See AR 18. After recounting Plaintiff's testimony, the ALJ found that the objective evidence did not substantiate Plaintiff's assertions of disabling psychiatric symptoms. See id. This reason was supported by substantial evidence. As the ALJ correctly pointed out, the record showed no formal mental health treatment, including any treatment for decompensation episodes. Additionally, although Plaintiff had been prescribed Xanax and Zoloft, the examination findings showed that he could perform activities of daily living and that he had a normal mental state without significant mood or cognitive abnormalities. See AR 19, 258-59, 268, 277, 289, 291, 298, 298, 358, 403-04, 455, 459, 463, 467, 487-88, 504, 510.

Plaintiff responds that under Ninth Circuit law, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." JS at 31 (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)). But Plaintiff has not cited any evidence that would suggest he was unaware of his mental illness or that his failure to secure mental health treatment was due to his mental illness rather than his own preference. To the contrary, Plaintiff's various mental status examinations did not reveal any significant issues, and in June 2018, he denied depression, suicidal ideation, and otherwise had a normal mental status examination. See AR 403. Accordingly, Plaintiff's reliance on Nguyen is misplaced. See Molina v. Astrue, 674 F.3d 1104, 1113-14 (9th Cir. 2012) (holding that where there was no medical evidence that the claimant's resistance to treatment "was

attributable to her mental impairment rather than her own personal preference," the ALJ properly considered the claimant's failure to seek mental health treatment).

The ALJ also found, and the record confirms, that Plaintiff's activities of daily living, which included the ability to care for his personal hygiene without prompting or reminders, prepare meals for himself, do household chores, go outside, use the computer, and get along with authority figures, indicated that his limitations were no more than mild, at most. See AR 19, 218. Plaintiff responds that his activities of daily living are not useful in assessing his work abilities. See JS at 31 (citing Smolen v. Chater, 80 F.3d 1273, 1287 (9th Cir. 1996)). Although it is true that a Plaintiff need not be "utterly incapacitated to be eligible for benefits," Smolen, 80 F.3d at 1284 n.7, the ALJ could permissibly infer from Plaintiff's activities that his mental impairments were not disabling. See Castillo v. Berryhill, 693 F. App'x 659, 660 (9th Cir. 2017) (ALJ did not err in finding claimant's mental impairments were not severe where he did his own laundry, took walks, lived unassisted, drove a car, made his own meals, and attended medical appointments on his own).

Plaintiff also suggests that the ALJ should have ordered a consultative examination. An ALJ "may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the Social Security Administration] to make a determination or decision" on a claim. 20 C.F.R. § 404.1519a. Plaintiff does not explain, however, how the evidence before the ALJ was inconsistent or insufficient. The ALJ had before it several years of medical evidence, including the opinions of Plaintiff's doctors and the State agency mental health consultants. That was sufficient.

Accordingly, the ALJ did not err in finding that Plaintiff's mental limitations were nonsevere.

## IV. CONCLUSION

The decision of the Social Security Commissioner is AFFIRMED and this case is dismissed with prejudice.

IT IS SO ORDERED.

Date: April 28, 2021

DOUGLAS F. McCORMICK
United States Magistrate Judge